**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **NICHOLAS WILLIAMS** | * | **CIVIL ACTION** |
| | * | |
| **VERSUS** | * | **NO. 10-170** |
| | * | **Ref. All Cases** |
| **INTERNATIONAL CONSTRUCTION** | * | |
| **GROUP, LLC** | * | **SECTION "L"(4)** |

**ORDER & REASONS**

Before the Court is defendant International Construction Group, LLC's ("ICG")

Motion for Summary Judgment.  (R. Doc. 22).  The Court has reviewed the briefs submitted by

the parties, as well as the applicable facts and law, and is now ready to rule.  For the following

reasons, IT IS ORDERED that ICG's Motion is GRANTED.

**I.        BACKGROUND**

This case arises from personal injuries sustained while working aboard a vessel.  On

or about January 3, 2008, Plaintiff Nicholas Williams was employed as a welder foreman and

member of the crew of the Derrick Barge IOS 800 ("Barge") which was owned and/or operated

directly and/or pro hoc vice by ICG, and which was located at Hope Services yard in Dulac

Louisiana, Terrebonne Parish.  *See* (R. Doc. 1)(Complaint).  On the date in question, ICG is

alleged to have sent home all deckhands and/or laborers not directly employed by ICG when the

Barge came into the yard.  *See id.*  According to the Plaintiff, Adrian Landry, his fellow crew

member and welding foreman, informed Plaintiff that the Barge superintendent, Ronnie

McCormick, had instructed them to wash-off the old bulkhead, clean-up the area, and put a lock

on the hand-rail on the stern of the Barge.  *See id.*  In carrying out these tasks by himself,

1

particularly the installation of a lock for the hand rail, Plaintiff lifted a pad eye and claims to have immediately felt an onset of back pain.  *See id.*

Plaintiff filed suit in this Court on January 25, 2010, alleging that his injuries sustained in lifting the pad eye were caused by the negligence and/or strict liability of ICG.  *Id.* Specifically, Plaintiff alleges ICG is responsible for the following: failure to provide a safe place to work; failure to provide a sufficient crew; failure to provide adequate tools, gear and appurtenances; the presence of inferior, inadequate, and otherwise improper and/or defective equipment, tools, gear and appurtenances; failure to properly supervise and/or train employees; and creating and making a hazardous or dangerous condition.  *See id.*  Plaintiff further alleges he has sustained progressive, serious and permanent injuries, consisting of severe trauma and injury to his back.  *See id.*  Plaintiff seeks damages for his personal injuries, pain and suffering, mental anguish, lost of income and earning capacity, and medical expenses.  *See id.*  Subsequently, Plaintiff filed a First Amended Complaint, alleging jurisdiction pursuant to the Jones Act and the general maritime law of the United States, as well as alleging an unseaworthiness claim against ICG.  (R. Doc. 8).

ICG filed an Answer denying liability on the basis that Plaintiff's injuries were the result of Plaintiff's own fault and negligence, as well as the usual and normal risks of his occupation, and seeking limitation of liability.  (R. Doc. 10).

Relatedly, on November 19, 2008, a judgment was entered in the 32nd Judicial District Court, Parish of Terrebonne, awarding Plaintiff maintenance and cure benefits for his injuries.  *See Nicholas Williams v. International Construction Group*, Civil Action No. 153953. Pursuant to this judgment, ICG began paying Plaintiff maintenance and cure.  *See* (R. Doc.

2

1)(No. 10-3319).  On September 29, 2010, ICG filed a Complaint for Declaratory Judgment in this Court, alleging that Plaintiff has reached maximum medical improvement and thus, ICG's maintenance and cure obligation is terminated.  *See* (R. Doc. 1)(No. 10-3319).  This case was consolidated with the earlier litigation, *see* (R. Doc. 20), and later resolved in favor of ICG pursuant to an unopposed motion for summary judgment.  *See* (R. Doc. 31).

## II.        PRESENT MOTION

ICG filed the present Motion seeking a summary judgment ruling that it did not breach its Jones Act obligations and that the Barge was not unseaworthy.  In support of its Motion, ICG relies upon the deposition testimony of the Plaintiff, particularly that Plaintiff was in a position of authority when he decided to lift the pad eye on his own, despite the presence of other employees, and Plaintiff had been trained numerous times over the course of his maritime-related career as to proper lifting techniques.  Based upon this testimony, ICG claims that Plaintiff's injuries were not the result of its negligence or any defect in the vessel.

In his Response, Plaintiff contends that ICG was negligent under the Jones Act and the vessel was unseaworthy because, (1) he was injured while working under the instruction of his supervisor to make a latch, and (2) his injuries were the result of lack of proper personnel to help him, lack of proper equipment, and lack of a twisting and lifting instruction.

ICG filed a Reply to Plaintiff's Response, refuting the bases put forth by the Plaintiff to support his liability claims.  ICG claims that the task assigned to Plaintiff did not require the assistance of others or heavy lifting, and that lifting the pad eye was the Plaintiff's choice since there was other pipe he could have used that did not require moving the pad eye.  Additionally, ICG claims that Plaintiff did not lack the proper equipment to move the pad eye, but rather he

3

failed to seek out proper equipment, even admitting such was available.  Finally, ICG contends

that Plaintiff was in fact instructed not to twist his body when lifting equipment.

III.    LAW & ANALYSIS

    A.    **Standard of Review**

Summary judgment will be granted only if the pleadings, depositions, answers to

interrogatories, and admissions, together with affidavits, show that there is no genuine issue as to

any material fact and that the moving party is entitled to a judgment as a matter of law.  Fed. R.

Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265

(1986); *Brown v. City of Houston*, 337 F.3d 539, 540-41 (5th Cir. 2003).  A material fact is a fact

which, under applicable law, may alter the outcome of the suit.  *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Ameristar Jet Charter, Inc. v. Signal

Composites, Inc.*, 271 F.3d 624, 626 (5th Cir. 2001).  A dispute is genuine when a reasonable

finder of fact could resolve the issue in favor of either party, based on the evidence before it.

*Anderson*, 477 U.S. at 250; *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th

Cir. 2002).  "The moving party bears the burden of demonstrating that there exists no genuine

issues of material fact."  *In re Vioxx Prods. Liab. Litig.*, 501 F.Supp.2d 776, 781 (E.D. La. 2007).

When considering a motion for summary judgment, the Court must "review the facts drawing all

inferences most favorable to the party opposing the motion."  *Gen. Universal Sys., Inc. v. Lee*,

379 F.3d 131, 137 (5th Cir. 2004).  If the party moving for summary judgment demonstrates the

absence of a genuine issue of material fact "the nonmovant must go beyond the pleadings and

designate specific facts showing that there is a genuine issue for trial."  *Willis v. Roche*

*Biomedical Labs., Inc.*, 61 F.3d 313, 315 (5th Cir. 1995).

Furthermore, the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. *See Anderson*, 477 U.S. at 248. Therefore, "[i]f the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. *Id*. at 249-50 (citations omitted). Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case on which they bear the burden of proof. *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004). A non-movant's conclusory allegations or bare assertions unsupported by facts are insufficient to defeat a motion for summary judgment. *Anderson*, 477 U.S. at 247-48.

### B.   Jones Act

The Jones Act provides a seaman injured in the course of employment with the right to bring a civil action at law, including the right of trial by jury, *see* 46 U.S.C. § 30104(a), and thus "create[s] a statutory cause of action for negligence." *Atl. Sounding Co., Inc. v. Townsend*, 129 S.Ct. 2561, 2570 (2009). Under the Jones Act, an employer owes its employees a duty to use reasonable care to provide a safe place to work. *Verret v. McDonough Marine Serv.*, 705 F.2d 1437, 1441 (5th Cir. 1983). However, this standard of care does not hold employers to a higher duty of care than required under ordinary negligence. *See Gautreaux v. Scurlock Marine, Inc*., 107 F.3d 331, 339 (5th Cir. 1997). This duty is simply one of ordinary prudence under the circumstances. *Id.*

The Fifth Circuit in *Pallis v. United States*, 369 Fed.App'x 538 (5th Cir. 2010), addressed Jones Act claims similar to those alleged by the Plaintiff. In *Pallis*, plaintiff appealed the bench trial findings of the district court, including the court's finding that plaintiff was 75% contributorily negligent for his injuries which the court found were caused by the plaintiff's

decision to move an object on his own rather than wait for assistance or use available machinery, and the defendant employer was 25% contributorily negligent since plaintiff sought assistance from his supervisor who informed him that assistance was not available at the time. *See id.* at 540-41. On appeal, the Fifth Circuit affirmed the district court's findings on the basis that the plaintiff "was an experienced seaman, assigned to the task of transporting objects of different sizes and weights. He requested assistance-in a general manner-to complete the task, and then chose to carry a heavy object without waiting for human assistance or using mechanical aid." *Id.* at 542. The Circuit also noted that the district court based its conclusion in part on the finding that plaintiff was under "stop-work authority," requiring him "to recognize when a task exceeds his abilities and requires him to either stop and wait for assistance or use mechanical help." *Id.*

Similarly, this Court in *Domingue v. Offshore Service Vessels, LLC*, 2009 WL 3254147 (E.D. La. Oct. 7, 2009), granted summary judgment in favor of the defendant on a Jones Act claim where the evidence demonstrated that the plaintiff was required to take a safety class, had the opportunity to ask for assistance, but chose not to, and plaintiff did not use a sledgehammer that was available for assistance.

This Court also reached a similar conclusion in *Bush v. Keystone Shipping, Inc*., 1999 WL 280413 (E.D. La. May 3, 1999). Therein, plaintiff was injured while carrying lumber as part of his assigned task to build a crate. *See id.* at *1. Plaintiff brought a Jones Act claim, among others, alleging that the defendant employer was negligent in failing to instruct plaintiff in the safe manner to do his work, failing to provide a safe workplace, and failing to provide adequate machinery to perform the assigned task. *See id.* The Court presided over a bench trial and issued findings of fact and conclusions of law, denying the Jones Act claims on the basis that the

"assignment of [plaintiff] alone to the task was not negligent and [plaintiff] had been adequately trained to ask for additional help in carrying heavy objects." *Id*. at *4.

In the present case, Plaintiff bases his Jones Act claims upon the following allegations: there was insufficient crew to assist him in making the lock since his own welding crew was dismissed, leaving only non-welding crew members; there was no equipment for him to make the lock, for example a hand cart or dolly; and ICG failed to instruct Plaintiff on how to make the lock and how to properly lift the pad eye. However, Plaintiff's own deposition testimony contradicts these allegations. For example, even though his welding crew had been dismissed, Plaintiff admitted that three crew-members were in the welding shack at the time of his injuries and that he did not ask them for assistance, but if he had, they would have assisted him. *See* Pl.'s Dep. pp. 117, 124, 128-29. Plaintiff admits that he "should have, but [] didn't" ask these crew-members for assistance. *See id.* at pp. 144-145; *see also id.* at p. 124. Additionally, there is no indication that the latch-making task assigned to Plaintiff required the assistance of other crew members; rather, Plaintiff admitted that, although inconvenient, he could have used pipe from a rack without assistance instead of the pipe trapped beneath the pad eye. *See id*. at pp. 78, 98-99, 100-02, 104-05.

With regard to the equipment available to Plaintiff in making the latch, once again it should be noted that Plaintiff concedes he could have used pipe from the rack, which presumably did not require any special equipment. *See id.* Nonetheless, even if Plaintiff was instructed to use the pipe trapped beneath the pad eye, he admits he could have asked the crane-operator present to use the "cherry picker" crane to lift the pad eye, *see id.* at 81, 83, 130, 144-45, or he could have safely moved the pad eye as he had done in the past, by flipping it over or asking for

assistance.  *See id.* at 114-15.

Finally, with regard to proper instruction, the Plaintiff's own testimony demonstrates he was properly instructed on how to lift heavy objects, such as the pad eye.  In Plaintiff's decade-plus career working on vessels, he participated in at least five different safety orientation programs and policies, one of which being ICG's, and all of which provided instruction on proper lifting techniques and required "stop work" authority, that is stopping and seeking help when a task is unsafe.  *See id.* at pp. 23-26, 28-29, 33-34, 38-40, 55-57, 86-87, 90-91, 135-36.

Considering the foregoing evidence, namely Plaintiff's own deposition testimony, under the applicable Jones Act negligence standard, as well as the applicable case law, the Court finds that summary judgment denying Plaintiff's Jones Act claims is appropriate.  Plaintiff chose to move the pad eye on his own even though he could have sought out assistance, either from the crew-members present or the available equipment, or used the pipe available which did not require assistance at all.  Plaintiff had instruction in safe-lifting techniques, as well as stop-work authority.  Any negligence contributing to Plaintiff's injuries was on the part of the Plaintiff himself, not ICG.

### C.     Unseaworthiness

Independent of its duty under the Jones Act, a shipowner or operator of a vessel owes a duty to furnish a seaworthy ship to members of the vessel's crew.  *The Osceola*, 189 U.S. 158 (1903); *Mitchell v. Trawler Racer, Inc.*, 362 U.S. 539, 549 (1960).  The duty of seaworthiness is absolute, but "it is a duty only to furnish a vessel and appurtenances reasonably fit for their intended use."  *Id.* at 550.  The owner is not "'obligated to furnish an accident-free ship.'"  *Park v. Stockstill Boat Rentals, Inc.*, 492 F.3d 600, 604 (5th Cir. 2007)(quoting *Mitchell v. Trawler*

8

*Racer, Inc.*, 362 U.S. 539, 550 (1960)).  For a vessel to be found unseaworthy, the seaman must

establish a causal connection between his injury and the breach of duty that rendered the vessel

unseaworthy.  *Jackson v. OMI Corp*., 245 F.3d 525, 527 (5th Cir. 2001).  The standard required

to prove causation for unseaworthiness is more strict than for a Jones Act claim of negligence.

*Comeaux v. T.L. James & Co., Inc*., 702 F.2d 1023, 1025 (5th Cir. 1983).  Causation in

unseaworthiness requires a showing of "proximate causation in the traditional sense."  *Id*.

Once again the Fifth Circuit's decision in *Pallis* provides guidance to the Court in

reaching its own decision.  Therein, the Circuit also affirmed the district court's denial of the

unseaworthiness claim, reasoning that the district court properly implied that the number of crew

available for assisting the plaintiff was not the cause of plaintiff's injuries.  *See Pallis*, 369 Fed.

App'x at 343-44.  Similarly, in *Domingue,* this Court denied an unseaworthiness claim on the

basis that the plaintiff's "isolated act of lifting the kenter link alone that resulted in an injury

does not establish unseaworthiness."  *See* 2009 WL 3254147.  Likewise, this Court's decision in

*Bush*, involved a similar unseaworthiness claim, that is, that the vessel was undermanned or

contained insufficient crew.  *See* 1999 WL 280413 at *1.  The Court denied the plaintiff's

unseaworthiness claim, finding that the vessel was not unseaworthy "by virtue of an inadequate

or undermanned crew or inadequate equipment."  *Id*.

Here, Plaintiff claims, as he does under the Jones Act, that the lack of a full crew and

proper equipment rendered the vessel unseaworthy.  However, as discussed above, neither a full

crew or any other equipment was necessary for Plaintiff to carry out his assigned latch-making

task, nor was the lack thereof the cause of his injuries.  On this basis, especially considering

causation for unseaworthiness is stricter than that for Jones Act negligence, the Court finds that

the vessel was not unseaworthy.

**IV.      CONCLUSION**

     For the foregoing reasons, IT IS ORDERED that ICG's Motion for Summary Judgment is GRANTED, dismissing Plaintiff's claims with prejudice.

     New Orleans, Louisiana, this 22nd day of March 2011.

 

                                                             _____
                                                             UNITED STATES DISTRICT JUDGE